Donna AMALFITANO, Plaintiff
Below, Appellant,

v.

Shawn M. BAKER, Defendant
Below, Appellee.

No. 594, 2000.

Supreme Court of Delaware.

Submitted: Sept. 11, 2001.
Decided: Oct. 16, 2001.

Joseph W. Benson and Andrew G. Ahern III, Wilmington, for appellant.

James J. Haley, Jr., Ferrara, Haley, Bevis & Solomon, Wilmington, for appellee.

Before VEASEY, Chief Justice, WALSH, and STEELE, Justices.

STEELE, Justice:

Donna Amalfitano, plaintiff-below, appeals the order of the Superior Court denying her Motion for a New Trial. At trial she sought compensation for injuries she claims occurred as the result of a 1997 automobile collision. The defendant admitted liability and the parties submitted the case to a jury on the issue of damages alone. After two days of testimony, the

jury returned an award of zero damages for Amalfitano. The trial judge denied her motion for a new trial, finding that the jury could have reasonably determined that the 1997 accident did not proximately cause her injuries.

Amalfitano argues that the trial judge abused his discretion when he denied her Motion for New Trial because the jury returned a verdict adverse to her despite uncontradicted medical and lay testimony relating her injuries to the 1997 accident. The trial judge held that the proximate cause determination turned on issues of credibility leaving the jury free to accept or reject Amalfitano's testimony about her injuries.

We conclude that where medical experts present uncontradicted evidence of injury, confirmed by objective medical tests supporting a plaintiff's subjective testimony about her injuries and offer opinions that the injuries relate to the accident about which the plaintiff complains, a jury award of zero damages is against the weight of the evidence. Therefore, the trial judge abused his discretion when he denied the Motion for New Trial.

## I.

This personal injury litigation stems from an April 9, 1997 auto accident in New Castle County, Delaware. After making a left turn onto Chapman Road in Newark, Amalfitano was stopped or was in the process of stopping her vehicle behind a DART bus when a second vehicle driven by Appellee, defendant below, Shawn Baker struck her left rear bumper. Both parties moved their vehicles from the roadway and waited several hours for the arrival of a police officer.

Amalfitano testified that immediately following the accident, she was "shaken up," but did not believe she had been injured. Several hours later after arriving at her job, however, she began experiencing pain in her back. She left work and went to nearby Glasgow Medical Center for an examination. During her examination, Amalfitano also complained of pain in her neck. In response to her complaints, the medical staff ordered that X-rays be taken in addition to their routine examination. Later that day they prescribed pain medication and released Amalfitano.

Amalfitano testified that when her pain had not subsided within a few days, she contacted her physician of 15 years, Dr. Gregory Papa, for treatment. Dr. Papa prescribed rest, medication and a program of physical therapy with Dr. T. Shane Palmer, a licensed chiropractor. The evidence shows that Amalfitano underwent a treatment program with Dr. Palmer for approximately two months, while Dr. Papa continued to monitor her condition. Amalfitano testified that at the time of trial she continued to experience pain and had been unable to return to her pre-accident routine.

On June 26 and 27, 2000, the parties tried this case before a jury on the issue of Amalfitano's injuries only. Baker admitted liability before the trial. At trial, both Dr. Papa and Dr. Palmer testified as medical experts. They stated that in addition to Amalfitano's subjective complaints of headache, neck pain and back pain, they detected spasm and limited range of motion through objective testing. They further testified that it was their opinion, based upon both Amalfitano's subjective complaints *and the results of their objective tests*, that the April 1997 accident proximately caused her injuries. The defense neither presented medical expert testimony to counter the opinions of Drs. Papa and Palmer nor asserted that Amalfitano was not injured in the April 1997 accident. .

## II.

On appeal we review the trial judge's denial of Amalfitano's Motion for New Trial under an abuse of discretion standard.[1] Historically, this State's courts have exercised their power to grant a new trial with caution and extreme deference to the findings of a jury.[2] A court will not set aside a jury's verdict unless "the evidence preponderates so heavily against the jury verdict that a reasonable juror could not have reached the result." [3]

At trial, defense counsel did not contend that the April 1997 accident caused no injury. Instead, the defendant primarily argued that injuries sustained in both earlier and later accidents mitigated her damages in this case. In support, the defense offered evidence of those accidents and cross-examined Drs. Palmer and Papa about other injuries attributable to those accidents. At no time did the cross-examination of either doctor elicit testimony inconsistent with their opinion that this accident proximately caused the injuries about which she complained. Nor did the defense offer independent medical testimony to counter Papa and Palmer's opinions. Indeed, defense counsel went so far as to admit in closing argument that the medical records evidenced minimal neck and back strain from this accident.

Despite the general deference of our courts to the findings of a jury, we held in *Maier v. Santucci* that a verdict of zero damages is inadequate and unacceptable as a matter of law where uncontradicted medical testimony establishes a causal link between an accident and injuries sus-

tained.[4] The trial judge erred in his attempt to distinguish *Maier* from this case. In his denial of Amalfitano's Motion for New Trial, the trial judge held that the uncontradicted testimony of the medical experts did not rise to the level of "conclusive" evidence as he understood it to be articulated by this Court in *Maier*. In *Maier*, the expert medical testimony presented by the plaintiff attributing proximate cause to the accident in question was confirmed by the testimony of the defendant's own medical experts.[5] Thus, the trial judge in this case reasoned that the merely "uncontradicted" testimony of Drs. Papa and Palmer standing alone did not rise to that standard. Apparently the trial judge believed *Maier* to be consistent with a view that a jury could reject as not credible not only a plaintiff's subjective complaints and the inference that they relate to the accident in question, but also the uncontradicted objective findings and expert opinions on causation of the plaintiff's treating physicians.

We do not read *Maier* as having left room for such an argument. We hold that these two factual patterns are legally indistinguishable and that uncontradicted medical evidence of injuries and their proximate cause, confirmed by independent objective testing, meet the standard of "conclusive" evidence of injury that would require a reasonable jury to return a verdict for at least minimal damages.

Although we have consistently held that the issue of proximate cause is ordinarily a question of fact for the jury to determine,[6] the jury must still base its

1. *Storey v. Camper*, Del.Supr., 401 A.2d 458, 465 (1979).

2. *Lacey v. Beck*, Del.Super., 161 A.2d 579 (1960).

3. *Storey*, 401 A.2d at 465.

4. *Maier v. Santucci*, Del.Supr., 697 A.2d 747, 749 (1997).

5. *Id.*

6. *Laws v. Webb*, Del.Supr., 658 A.2d 1000, 1007(1995); *Money v. Manville Corp. Asbestos Disease Trust Fund*, Del.Supr., 596 A.2d 1372,

opinion on the evidence before it. As we have stated, a jury "cannot totally ignore facts which are uncontroverted and against which no inference lies."[7] In light of this standard, the trial judge erred by concluding that expert medical evidence can be "conclusive" only when both sides call witnesses that agree. Evidence that is unrebutted when presented by one side but left uncontradicted by the other party should also, absent unusual circumstances, be considered "conclusive." In neither instance will a jury have the appropriate evidence on which to reach an award of zero damages.

■ The trial judge further erred when he concluded that this Court's holding in *Gier v. Kananen*[8] applied to the facts of the instant case. It is well-settled law that a jury may reject an expert's medical opinion when that opinion is substantially based on the subjective complaints of the patient.[9] In *Gier*, we affirmed the decision of the Superior Court denying a new trial where the jury awarded zero damages when the plaintiff had presented uncontradicted expert medical opinion based solely upon the subjective complaints of the plaintiff to establish proximate cause. That case differs significantly from the case before us.

Neither the opinion of the Supreme Court nor the order of the Superior Court in *Gier* indicates that either medical expert conducted independent objective tests to corroborate the subjective complaints of the plaintiff. Thus, in determining the reasonableness of the jury verdict, the *Gier* court properly chose to rely upon the judgment of the Superior Court given the exceptional and fraudulent behavior by the plaintiff affecting her credibility. That behavior was documented in the record.[10] In the present case, there is no evidence suggesting the kind of credibility problems that plagued the plaintiff in the *Gier* case. Defense counsel failed to raise any credible issue about the motives of or suggesting bias by the plaintiff's expert witnesses that could taint their testimony about the plaintiff's condition, the independent and objective nature of their examinations and tests or their ultimate conclusions that she suffered injury as a result of the April 1997 accident.

Thus, the defense presented the jury with *no basis upon which to reject* Amalfitano's uncontradicted subjective complaints, the confirmatory objective findings of her medical experts, or their ultimate findings that she suffered injuries proximately caused by the accident. In short, no reasonable juror could have returned a verdict of no damages on the evidence presented.

1375 (1991); *Culver v. Bennett*, Del.Supr., 588 A.2d 1094, 1098 (1991).

7. *Maier*, 697 A.2d at 749 (*quoting Haas v. Pendleton*, Del.Super., 272 A.2d 109, 110 (1970)).

8. Del.Supr., No. 522, 1992, 628 A.2d 83, Horsey, J. (1993) (Order).

9. *Breeding v. Contractors–One–Inc.*, Del.Supr., 549 A.2d 1102, 1104 (1988).

10. In *Gier*, there was evidence that the plaintiff had failed to disclose a later accident during deposition, had failed to make any mention of the injuries she was attributing to the accident during a doctor's visit just one week after the accident occurred, and that she had requested a "paper" raise from her employer to fraudulently increase the amount of lost wage benefit that she would recover from her insurer.